PER CURIAM.
This interlocutory appeal brings for our review a bitter trial history involving the divorced parents’ custodial rights to their minor daughter. The original divorce action was instituted in 1966 by the husband-appellant and the wife was defendant therein. At the conclusion of that proceeding, the Chancellor awarded temporary child custody to the maternal grandparents. Sometime thereafter, the husband learned that the child had been removed to New Jersey, there residing with her mother and the mother’s new husband.
Subsequently, when the court was apprised of this situation, the Chancellor scheduled a hearing for January 15, 1968, at which the wife and her parents' were ordered to show cause why they should not be adjudicated in contempt of court for failure to comply with the custodial directions contained in the final decree of divorce, supra.
That hearing resulted in an order, dated January 23, 1968, wherein the wife was adjudged in contempt and the child ordered to be returned to her maternal grandparents;
But the custodial difficulties did not end with that order of the court, because thereafter, the husband and his father, Joel J. C. Foster, Sr., went to New Jersey and returned to Florida with the child. Subsequently in March, 1968, the husband filed his Petition For Modification of final decree which requested custody of the child. A hearing was held on April 17, 1968, wherein the child was not before the court.
The above hearing resulted in an order of the court dated April 18, 1968, from which this interlocutory appeal is taken. We shall set forth the specific provisions complained of as they arise in the appellant’s argument.
*449 Paramount among the Chancellor’s orders was the new custodial provision. It is:
“1. That permanent custody of the parties’ minor child should be awarded to Defendant with reasonable rights of visitation preserved to Plaintiff and the child forthwith delivered to Defendant’s custody to reside with Defendant, who has now remarried, in Defendant’s home, whether it be within or without the State of Florida.”
We find no showing of abuse of discretion on behalf of the Chancellor. Nixon v. Nixon, Fla.App. 1968, 209 So.2d 878.
Among the other recitations contained in the court’s order, the provision setting forth the husband’s costs is as follows:
“5. That Plaintiff, shall, within ten days from date hereof, make the following payments as indicated:
“(A) Pay to Defendant, in trust for the use and benefit of said child, all monies now held on trust deposit, said funds representing accumulated child support.
“(B) Pay to Defendant $145.00, said amount representing travel expenses to the above subject hearing, the Court denying any costs for attendance at the April 2, 1968 hearing.
“(C) Pay to William John Mason, Esq., the sum of $790.00, said amount representing reasonable attorney’s fees herein for his representation of Defendant in the defense of Plaintiff’s Petition to Change Custody, and $40.00 Court costs.”
Husband-appellant now contends that the court erred in ordering him to pay not only the wife’s attorney’s fees of $750.00, but also $145.00 which represents travel expenses incurred by the wife when she came to Miami from New Jersey. Section 61.15, Fla.Stat. F.S.A.,[1] is the statutory authority which bestows the power to award attorney fees and suit money on the Chancellor in this type of post-decretal legal proceeding. As to the award for attorney’s fees the general rule is that such allowance is proper, under § 61.15 supra, when the husband has filed a petition in chancery to change the custody provisions of the final decree of divorce. McNeill v. McNeill, Fla.1952, 59 So.2d 57; O’Neal v. O’Neal, Fla.App.1963, 158 So.2d 586; Metz v. Metz, Fla.App. 1959, 108 So. 2d 512. Without a showing by the appellant that the Chancellor abused his discretion, the award of attorney’s fees must stand on appellate review. 10 Fla.Jur. Divorce § 137. The appellant has failed to demonstrate that the $750.00 award shown here was such an abuse of discretion. Therefore, that portion of the court’s order is affirmed.
The $145.00 expense incurred by the wife was a result of her trip to Miami made expressly for the purpose of defending the husband’s Petition For Modification. Whether or not expenses incurred, such as wife’s travel expenses here, are to be considered “suit money” has never been expressly decided in Florida. However, we have considered expenses incurred for private investigators to ,be suit money as within the Chancellor’s discretion, Simpkins v. Simpkins, Fla.App.1967, 198 So.2d 648; and suit money has also been broadly defined as those costs necessary to defend or prosecute a divorce pendente lite, Orr v. Orr, 141 Fla. 112, 192 So. 466, 467. Other jurisdictions have, expressly decided that suit money is to include travel expenses to the attorney’s office. See Finnegan v. Arnold, 55 S.E.2d 399, 19 A.L.R.2d 700 *450 (W.Va.1949). We therefore hold that the Chancellor’s award of $145.00, such amount representing travel expenses to the hearing here in question, was allowable within § 61.15, Fla.Stat. F.S.A., and as such, did not represent an abuse of the Chancellor’s discretion.
The appellant has also raised as error that part of the court’s order which adjudicated the appellant-husband, and also his father to be in contempt of court. The court found as follows:
“3. That the Court finds the Plaintiff in Contempt for his willful interference with the jurisdiction of this Court, his interference with this Court’s Order regarding previously awarded custody and his secreting the child from the Court and Defendant, and Plaintiff is sentenced to thirty days in the Dade County Jail, which sentence is suspended under the conditions hereinafter recited.
“4. The Court has previously sentenced JOEL J. C. FOSTER, SR. to thirty days in jail, this commitment being stayed by the District Court of Appeal, Third District, and the Court reaffirms its findings and Order of Contempt, although it appears said Appellate Court has now taken jurisdiction of Mr. Foster, Sr.
“5. The aforesaid sentence of this Court directed to Plaintiff is stayed upon the condition that Plaintiff exercises proper behavior towards the child, her mother and the child’s step-father, and Plaintiff in no way harasses or interferes with peaceable living of these parties or in any other way flaunts this Court’s jurisdiction.
“6. The Court finds that both parties must exercise good behavior on behalf of said child.”
Although the appellant has only recited the above provision and concluded that “the record speaks for itself,” we must, sua sponte, give legal substance to his attack on the contempt provision in the Chancellor’s order. As to the adjudication of contempt of the appellant’s father, the Chancellor did not, at the date of rendering, have jurisdiction over that person. The reason for this is that this court, in case No. 68-319, had acted in certain proceedings which were tantamount to habeas corpus proceedings with regard to Joel J. C. Foster, Sr. Pursuant thereto, the Sheriff of Dade County filed his return stating in essence that he had discharged Foster, Sr., in obedience to this court’s order. That case was pending in this court until November 27, 1968, wherein it was dismissed. Foster v. Foster, Fla.App. 1968, 216 So.2d 275. Therefore, the adjudication of contempt as to Foster, Sr., was null and void.
As to the adjudication of contempt that the Chancellor directed to the appellant, Joel J. C. Foster, Jr., we have examined that provision, supra, and found it to be defective.
In the case of Dykes v. Dykes, Fla.App. 1958, 104 So.2d 598, this court held the contempt order of the lower court to be defective for failure to provide a provision by which the contemnor could purge himself of the contempt. In so holding, the Dykes case quoted from Demetree v. State, Fla.1956, 89 So.2d 498, 501, wherein, it was stated:
“ * * * Customarily when imprisonment is ordered for a civil contempt its continuance is made contingent upon compliance of the order of the court and when the contemnor has so complied he is released from prison. The sentence is usually therefore indefinite and not for a fixed term. It is for this reason that in civil contempt it has been said that the contemnor ‘carries the key of' his prison in his own pocket.’ [Citing cases.] He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.”
See also Ex parte Koons, 148 Fla. 625, 4 So.2d 852 (holding that an order of contempt must be definite and certain and so complete as to require no further directions *451 to the executive officer to fully execute the order and release the contemnor when order is satisfied) ; State ex rel. Pipia v. Buchanan, Fla.App. 1964, 168 So.2d 783 (holding order of civil contempt to he defective wherein it was not provided that petitioner could purge himself of the civil contempt at any time prior to the termination of his specific sentence by complying with required judicial action).
In viewing the order being appealed, it appears to us that the appellant has no way of definitely apprising himself of the way he may purge himself of the contempt. Provision 5, supra, is so indefinite and uncertain as to deprive the appellant of his “key to his own prison” as required by past decisions. Therefore, that portion of the order being appealed adjudicating the appellant to be in contempt of court is hereby reversed. The rest of the order, based on the above cited authorities, is hereby affirmed.
Affirmed in part, reversed in part.

. “61.15 Divorce; subsequent proceedings; costs, fees, etc.— (1) When an action is brought for the purpose of enforcing a judgment or order for the payment of alimony or support for children, the court may allow to the divorced wife such sums of suit money, in-eluding a reasonable attorney’s fee, as from the circumstances of the parties and the nature of the case are equitable. “(2) Any order under the provisions of this section shall be enforced in the same manner as other judgments.”