## VARVEL v. VARVEL
No. 1319.
Circuit Court, Lake County.
April 1, 1971.

William A. Jacob and Michal E. Hamlin, both of Orlando, for the plaintiff.

Francis E. Pierce, Jr., Orlando, for the defendant.

W. TROY HALL, Jr., Circuit Judge.

This is a domestic relations proceeding. The defendant wife has currently moved this court for an award of attorney's fees for services rendered to her and for out of pocket expenses expended in her behalf since the last order of this court on attorney's fees in December 1969. The motion came on to be heard on March 13, 1971.

The parties were divorced in this court by its judgment dated November 15, 1967. The plaintiff husband was ordered to pay the defendant wife $30 per month for the support of their minor child, provided that he receive reasonable visitation rights. At the time of the divorce the husband was 24 years old, the wife was 20 years old, and the child was three years old. The wife had formerly resided with her husband in Orange County, Florida. After the divorce, the husband remained in Orange County, while she took up residence near her parents' home in a suburb of St. Louis, Missouri.

The parties engaged in extended, bitter and tumultuous controversy over custody of the child in Missouri, which resulted in the Missouri juvenile court taking jurisdiction over the child in March 1969. Physical custody of the child was placed with the wife by the Missouri court. Later, the wife took the child to Canada for what she said was a vacation with relatives who lived there. The husband alleged that she had taken the child and fled the jurisdiction of the Missouri court. The Missouri juvenile court issued an order in June 1969, placing *"temporary* physical custody

of the child with the child's father *in the state of Florida subject to supervision."* (Italics added.) Neither the wife nor the child had notice of this proceeding, nor did they or anyone on their behalf appear before the Missouri court in connection with the order.

The husband then went to Canada with his brother and abducted the child off the street and brought him to Florida. In December 1969, the wife filed in this court and served on the husband her petition for a rule to show cause why the husband should not be held in contempt for his failure to pay child support and his failure to deliver the child to her according to the terms of the final judgment of divorce entered by this court in 1967. She prayed for travel money from Missouri to Florida and her return; her expenses of food and lodging while on the trip; a reasonable attorney's fee; and her costs. The rule was issued.

The husband replied in written pleading, denying that he was in arrears on child support and setting up the order of the Missouri court as the basis of his legal right to custody. He alleged that the wife had failed to allow him to visit the child, thus breaching the Florida court's final judgment on the right of the husband to visit the child. Hearings on the rule were held for two days on December 23 and 24, 1969.

The wife argued for custody on the following grounds: that she was a fit mother, and that custody of the child in her was in the child's best interests. She urged the court that the law of the state of Florida favors the mother as the custodian of the child, when the mother is a fit custodian and it is in the child's best interests. She further argued that the Missouri order was not entitled to full faith and credit, nor comity, because jurisdiction was lacking in that neither the wife nor the child had notice of the proceedings. The wife further argued that she and the child were not before the court when the matter was heard, nor were they in the physical jurisdiction of the Missouri court when the matter was heard and the order issued. She also argued that her ex-husband had unclean hands in equity because he had abducted the child from her in a foreign country and his resulting custody of the child on that basis was unlawful.

The husband alleged that the wife was unfit as a custodian of the child, for numerous moral, social, physical and economic reasons and that he was a fit person for custody. He argued that his former wife had unclean hands, in equity, because she had taken the child from the jurisdiction of the Missouri court and fled to a foreign country. He argued that he was legally entitled to custody based upon the Missouri court's order awarding him temporary physical

custody. He alleged that the Florida court had no jurisdiction, or, in the alternative, if the Florida court did have jurisdiction, that the Florida court was required to give him custody under the full faith and credit clause of the United States constitution, or, in the alternative, upon comity. He denied that he was in arrears for child support.

The husband physically brought the child into this court, and the court had the opportunity to observe him closely and to talk with him at length. During the hearing, the court received a telephone call from a person in the administrative employ of the juvenile court in Missouri, who advised the court that she was calling on the request of the husband to advise the Florida court of the status of the case in Missouri. The husband gave evidence of his substantial income and economic resources. The court found that the wife's income was small but that when it was taken with her home situation, it was enough to provide a suitable home for the child. The court found both parents to be fit custodians of the child, and the court awarded custody to the wife. She, in turn, upon the plea of the husband, stipulated that the child could remain with him over Christmas. The husband was ordered to return the child to the wife on December 27, 1969. The parties were ordered to conduct themselves in such a manner as to cause minimum upset to the child. Detailed visitation rights were prescribed in the court's order. The court found some arrearage in child support, and ordered it paid. Attorney's fees, money for travel, food and lodging, and costs were awarded to the wife.

The husband returned the child to the wife in Missouri, and then the husband simultaneously caused the Missouri juvenile court to re-activate the matter of custody in Missouri. In January 1970, simultaneously with the Missouri juvenile court's activity, the husband moved in the Florida court for a rehearing, which motion was heard in February 1970, and at which time the Florida court deferred ruling and requested the submission of briefs from respective counsel. The attorney for the husband continually exhibited copies of continuing proceedings in the Missouri court concerning, among other things, social studies of the husband and the wife and their respective home environments. The wife moved the Florida court to hold the husband in contempt for his failure to pay to the child support arrearage and the attorney's fees, costs and suit money. Investigations of the fitness of both parties were ordered by the Missouri court and subsequent hearings on fitness were set. The husband and wife were restrained and enjoined by the Missouri court in its written order from applying to any other court in an effort to change the order of the Missouri court. The

husband then brought this and other orders to Florida and in February 1970, the husband filed an action in the circuit court in and for Orange County, Florida, alleging the residency of the husband in Orange County, the former marriage of the husband and wife, the birth of their son, the pendency of the pleadings in the circuit court in and for Lake County, Florida, in this cause, and the complicated proceedings in the juvenile court in Missouri. The husband prayed that the Orange County court would establish the latest order of the Missouri court as a final judgment in Orange County, and the husband prayed for an injunction against the wife, and also against the circuit court in Lake County, from proceeding with the pending cause in Lake County. The Orange County circuit court dismissed the complaint, holding that it would not assume jurisdiction to enforce a foreign order, on the basis of comity when the foreign order was not a final judgment. Subsequently, the Missouri court again awarded custody to the wife, and custody has remained with the wife through March 13, 1971, which is the date of the hearing from which this order is issued. The husband still has rights of visitation and has exercised them.

The ruling on the husband's motion in January 1970 for a rehearing, was deferred pending receipt of the parties' briefs, and a ruling on the wife's motion for contempt against the husband was deferred pending disposition of the husband's motion for rehearing.

In August 1970, the husband's motion for rehearing was denied. The husband was given approximately one month within which to pay the child support arrearages, the attorney's fees and the suit money. The attorney's fees were paid. The funds were disbursed to the wife in October 1970.

In November 1970, the motion which is the subject of this order was filed and served. It is a motion for attorney's fees, costs and suit money for services rendered and costs and suit money incurred on behalf of the wife since the court's last award of attorney's fees in December 1969. The cause was set for hearing and then continued three times: once on the court's own motion and twice for the convenience of the husband's attorney.

The husband and the wife appeared in court at the hearing on the motion for attorney's fees. The wife testified as to her need. The parties stipulated that the husband has the ability to pay a reasonable attorney's fee. The parties stipulated that the affidavit of the wife's attorney, dated October 29, 1970, would be admitted into evidence. The attorney for the wife testified concerning the services he rendered and their value. Each party produced a practicing attorney who testified as an expert witness concerning the value of a reasonable attorney's fee in this cause. Both the briefs

for the husband and the wife, submitted on the motion for rehearing, were admitted into evidence. The 1966 *Survey of the Economics of Florida Law Practice* conducted by the Florida Bar and the current cost of living index and other tables and information prepared by the United States Department of Commerce, were admitted into evidence.

The issue before the court at this time is the amount of an allowance of a reasonable attorney's fee to the wife's attorney for the following efforts — his successful defense of a motion for rehearing on the matter of custody; the contempt action by the wife seeking the payment to her of her attorney's fees and suit money already awarded; and, the services rendered in the determination of the attorney's fees currently being sought. The husband does not contest the wife's right to such an award, but only the amount of the award.

The general rule is that an attorney's fee is not allowable for a party who applies for a modification of provisions of a judgment for alimony, separate maintenance and support of children. On the other hand, if a party seeks to *enforce* these provisions of a judgment, an attorney's fee is allowable. See State ex rel. Paine v. Paine, 166 So.2d 708 (3rd D.C.A. Fla. 1964) ; Harris v. Harris, 138 So.2d 376 (3rd D.C.A. Fla. 1962), cert. den. 146 So.2d 374. Enforcement was sought by the wife in the instant case. §61.15 Fla. Stat. 1970 allows suit money and a reasonable attorney's fee for proceedings to enforce a judgment or order of the court in alimony or support actions. Of course, this is not a matter of right but is discretionary with the court. See McNeill v. McNeill, 59 So.2d 57 (Fla. 1952).

The expenses incurred by the wife were a result of these proceedings expressly for the purpose of enforcing the final judgment. Expenses incurred, such as travel expenses, are to be considered "suit money", under Foster v. Foster, 220 So.2d 447 (3rd D.C.A. Fla. 1969). The Florida courts have considered expenses incurred for private investigators to be suit money as within the chancellor's discretion, Simpkins v. Simpkins, Fla. App. 1967, 198 So.2d 648; and suit money has also been broadly defined as those costs necessary to defend or prosecute a divorce pendente lite, Orr v. Orr, 192 So. 466, 467. Other jurisdictions have expressly decided that suit money is to include travel expenses to the attorney's office. See Finnegan v. Arnold, 55 S. E. 2d 399, 19 A.L.R. 2d 700.

The husband stipulated that he is able to pay a reasonable attorney's fee. The wife's uncontradicted testimony is that she is a full time student at a college in Missouri. She also works in the college nursery and earns $33 per week. Her sole asset is a 1963

Volkswagen which she needs to go to and from school and work. Her car payment is $35.14 per month. She estimates her equity in the Volkswagen to be $250. She is on welfare in Missouri and receives welfare payments of $80 per month, together with food stamps, and an allowance for clothes and shoes for her son. It is almost redundant to say that she has shown her need for an award of attorney's fees and suit money. The question is well put in Gottesman v. Gottesman, 220 So.2d 640 (1949 Fla. App.) where it was held that elimination of the phrase "sound judicial discretion" by the 1967 amendment to Florida Statute 61.15, while it does not make allowance to an ex-wife of suit money including attorney's fees mandatory, does express the apparent objective of the legislation that when an ex-wife is represented by counsel in a proceeding for enforcement of a judgment or order for the payment of alimony or child support, or in resisting an application of her ex-husband to terminate or reduce such support, she should be allowed suit money and reasonable attorney's fees in such an amount as is equitable, unless there are sufficient circumstances or equitable considerations which preclude such an award recited in the record. The circumstances and equitable considerations of this case do not preclude an award. They compel an award. The court will now examine the factors under which the award will be computed.

A real problem, existing in England as well as in this country, relates to the basic economics of the practice of law. The legal profession, in terms of economic rewards, has not kept pace with other professions and is also behind those who engage in trade and business with comparable education and experience. This is not merely a problem for lawyers. In a very fundamental sense, this should be a matter of concern for all who wish to preserve our form of government and system of free enterprise. The rule of law is essential to both of these, and the effectiveness of the rule of law depends upon a strong, independent bench and bar. The ultimate strength, and certainly the independence of the legal profession, are necessarily related to the adequacy of economic incentives.

Minimum fee schedules serve as one of the means of encouraging fair and adequate charges for legal services. They also tend to minimize the unethical solicitation of business by "fee cutting" and the corresponding deterioration in the quality of legal services rendered the public. The courts have frequently recognized the value of minimum fee schedules in fixing attorney's fees. For a reference to these cases see 143 A.L.R. 719 and 56 A.L.R. 2d 45 and 46. But minimum fee schedules must never be used as a means of arbitrarily raising the level of legal charges or the judicial determination of fees without regard to the cost and value of the services

rendered. Nor should such schedules be considered mandatory, as the final determination of fees must always be made in light of the relevant considerations prescribed by the Code of Professional Responsibility adopted by the Supreme Court of Florida and made effective October 1, 1970. The following sections are relevant here —

### FINANCIAL ABILITY TO EMPLOY COUNSEL: PERSONS ABLE TO PAY REASONABLE FEES.

EC 2-16. The legal profession cannot remain a viable force in fulfilling its role in our society unless its members receive adequate compensation for services rendered, and reasonable fees should be charged in appropriate cases to clients able to pay them. Nevertheless, persons unable to pay all or a portion of a reasonable fee should be able to obtain necessary legal services, and lawyers should support and participate in ethical activities designed to achieve that objective.

EC 2-17. The determination of a proper fee requires consideration of the interests of both client and lawyer. A lawyer should not charge more than a reasonable fee, for excessive costs of legal service would deter laymen from utilizing the legal system in protection of their rights. Furthermore, an excessive charge abuses the professional relationship between lawyer and client. On the other hand, adequate compensation is necessary in order to enable the lawyer to serve his client effectively and to preserve the integrity and independence of the profession.

EC 2-18. The determination of the reasonableness of a fee requires consideration of all relevant circumstances, including those stated in the Disciplinary Rules. The fees of a lawyer will vary according to many factors, including the time required, his experience, ability, and reputation, the nature of the employment, the responsibility involved, and the results obtained. Suggested fee schedules and economic reports of state and local bar associations provide some guidance on the subject of reasonable fees. It is a commendable and long-standing tradition of the bar that special consideration is given in the fixing of any fee for services rendered a brother lawyer or a member of his immediate family.

### DR 2-106. FEES FOR LEGAL SERVICES

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case, nor shall he enter into an arrangement for, charge, or collect any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof.

The wife's attorney has practiced law since 1956. He has had wide experience in domestic relations cases. During his years of practice, he has appeared before this court on quite a number of occasions. The performance of his services has been under difficult circumstances because of his client's inability to respond to him for his fees or for her expenses advanced on her behalf. Further difficulty was caused by the wife's residence in Missouri.

The attorney has appeared in this court during the period in question on four separate occasions. He has written a brief that is said by the husband's counsel and expert witness to be excellent and involving numerous difficult points of law. The brief deals with the complicated factual situation in a clear and concise manner. The legal principles which apply to those facts are developed with great accuracy, and in a logical sequence which greatly facilitated the court's judicial labors in arriving at a fair, just and equitable solution.

Because of the attorney's efforts, the wife has the custody of her child. The expert witness for the wife has testified that he considers custody of a child to be one of the most important matters which can come before a court, and the court agrees. The results obtained by the attorney for the wife cannot be overstated.

The wife's attorney has kept daily records of his time. Sixty-five hours are meticulously accounted for, and eight hours in connection with the final proceeding are estimated, which is reasonable.

The expert witness for the wife has given well informed, factual testimony of great assistance to the court. The witness is prominent and qualified by his own experience to voice his expert and professional opinion with respect to the reasonable value of the legal services the attorney rendered to the wife. The expert witness for the wife wisely sought the counsel of other prominent attorneys in the community in forming his opinion.

Considering the gravity of the matter involved and the numerous difficult points of law involved, the court considers that the matters and litigations handled by the attorney for the wife before this court were both novel and difficult and exceed the novelty and difficulty of questions which an attorney of his ability and experience, practicing in central Florida, would normally have encountered.

Concerning the fee customarily charged in the locality for similar legal services, the court is fortunate to have before it the "Economic Survey of Florida Law Practice, 1966", published by the Florida Bar. Frequent reference will be made to it and the reference will be shown as "ES", followed by the page number, or to the appropriate appendix. From the Economic Survey, we learn that the typical Florida lawyer is about 40 years of age and is the product of one of the state's three major law schools. He devotes 40 hours per week to his practice. The Florida lawyer typically devotes more than half his income producing time to a single area of legal specialization. The wife's attorney has devoted approximately 73 hours to these efforts and he has great skill in matters of domestic relations. The attorney has a fee arrangement with his client and she has agreed to pay him a reasonable fee in this case, plus his expenses.

There is a distinct relationship between a lawyer's earnings and the number of lawyers in his firm. (ES 24) The average net income for a four-man law office in Florida in 1965 was $34,015. (Appendix 23) In 1965, attorneys in practice for 15 to 19 years had 19.8% of their number in the bracket of $25,000 to $35,000 of annual income. (Appendix 8) Net expense ratios of law firms reported in the Economic Survey ranged up to 36.5% and as low as 24.2%. (ES 36) The typical lawyer in private practice in Florida works 2,000 median hours per year with approximately 1,450 hours of fee producing work. However, this figure is believed to be higher than actual practice. (ES 39) The mid range of hourly rates in the fifth circuit was $25 to $35, and in the ninth circuit it was $25 to $30. (ES 53) The mid range is from 25% to 75% of the sample. (ES 3) Almost half of lawyers in firms most often first regard the time required for a legal matter as the factor most often considered in setting fees. (ES 61) For partner-

ships, two other factors receive an equal consideration. These are the custom of the community and the responsibility and skill required and the results required. (ES 61)

Testimony and evidence covering all of these statistical factors was received in support of the wife's motion. It is evidence and testimony of this nature which greatly simplifies judicial labor and results in judicial decisions which are equitable and just. It is evidence and testimony of this nature which results in the award of a reasonable attorney's fee. Too often such evidence and testimony is lacking. Evidence of a reasonable attorneys' fee should be given the same treatment as medical evidence in a personal injury case, or evidence of land value in an eminent domain proceeding. The husbands' attorney was most vigorous in searching all areas of the wife's attorney's allegations and proofs. Nothing escaped his inquiry or cross-examination.

Business and financial matters and conditions are proper subjects of judicial notice, if they are generally known, 20 Am. Jur., *Evidence* §65; 12 Fla. Jur., *Evidence* §35, and the cases cited thereunder. The court takes judicial notice of the ravaging effects of inflation in this country. Further, there is in evidence, the consumer price index and other information published by the United States Department of Commerce, which shows an erosion of the consumer's dollar by approximately 26% in the last five years, and more previous to that. The expert witness for the wife has also testified to the adverse effects of inflation. The determination of a reasonable attorney's fee must take inflation into account.

The right to attorney's fees is derivative in nature when representing the wife in a divorce action. Hope v. Lipkin, 156 So.2d 659 (3rd D.C.A. 1963).

It is the opinion of the court that the husband has the ability to pay a reasonable attorney's fee. Taking into account all of the factors to be considered, as they are defined in the Code of Professional Responsibility, together with the professional, statistical and economic evidence before the court, it is the conclusion of the court that 2,500 is a reasonable fee and that the expenses in the amount of $76.41 should be paid by the husband.

It is accordingly ordered and adjudged that the plaintiff, Ronald L. Varvel, shall pay an attorney's fee of $2,500, together with the expenses of this cause in the amount of $76.41, for a total sum of $2,576.41, instanter, to the defendant wife's attorney, Francis E. Pierce, Jr., at his office at Suite 865, Hartford Building, 200 East Robinson Street, Orlando, Florida 32801, said payment to be made in cash, cashier's check, certified funds, or money order.